UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

| | |
|---|---|
| RAYMOND PALAGYI, | |
| Plaintiff, | CASE NO. 1:13-CV-01734 |
| vs. | OPINION & ORDER |
| PITTSBURGH & CONNEAUT DOCK CO., | [Resolving Doc. No. 33, 35, and 36] |
| Defendant. | |

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this ERISA case, Defendant Pittsburgh & Conneaut Dock Company ("P&C Dock") moves for summary judgment.[1] Plaintiff Raymond Palagyi opposes.[2] For the following reasons, this Court **GRANTS** Defendant's motion for summary judgment.

**I. Background**

Plaintiff Raymond Palagyi was a mechanic who worked for Defendant P&C Dock for over twenty years.[3]

In 1998, Palagyi was diagnosed with right-hand carpal tunnel syndrome.[4] Palagyi had surgeries on his wrist.[5] As a result, Palagyi worked with medical restrictions for short periods of time.[6]

---

[1] Doc. 33.
[2] Doc. 35.
[3] Doc. 33-8 at 4.
[4] *Id.* at 5.
[5] *Id.* at 5-6.
[6] *Id.* at 6-10.

Case No. 1:13-CV-01734
Gwin, J.

In September 2007, Palagyi took medical leave for two shoulder surgeries.[7] Palagyi returned to work in November 2007 without work restrictions.[8]

In 2008, P&C Dock experienced a decline in business. As a result, P&C Dock furloughed Palagyi and recalled him to work multiple times in 2008, with the last furlough occurring November 2008.[9]

At the time of the furlough, Plaintiff Palagyi was under his old health insurance plan. It states:

> 9.14 If you cease work because of layoff, the following provisions will be applicable to your coverage, other than optional life insurance, under the Program:
>
> (a) If you have 10 or more years of continuous service on the date you cease work, your remaining coverage will be continued during such layoff up to a maximum of 12 months from the end of the month in which you last worked.[10]

Because Palagyi had worked more than 10 years, his insurance, unless he returned to work, would last until December 1, 2009.

On February 2, 2009, P&C Dock recalled Palagyi to service.[11] Palagyi worked for two days.[12] On February 4, 2009, P&C Dock pulled Palagyi from service due to conflicting information regarding his medical restrictions.[13]

After follow-up inquiries, Palagyi provided documentation showing his medical

---

[7]*Id.* at 14.
[8]*Id.* at 15.
[9]*Id.* at 15-16.
[10]Doc. 33-33 at 23.
[11]Doc. 33-8 at 17.
[12]*Id.*
[13]*Id.* at 18.

Case No. 1:13-CV-01734
Gwin, J.

restrictions,[14] and on April 6, 2009, Palagyi was medically disqualified from service.[15] Palagyi later applied for permanent disability benefits.[16]

P&C Dock and Palagyi's union negotiated and finalized a new collective bargaining agreement effective January 1, 2009.[17] Thus, Palagyi received benefits under the new collective bargaining agreement.

Under Palagyi's new health insurance, P&C Dock provided coverage to an out-of-service employee for two years and to his spouse for one year. The new plan states:

> If you cease to render compensated service solely as a result of disability, including disability due to your pregnancy, or if you become disabled by reason of pregnancy or otherwise before your coverage as a Furloughed, Suspended or Dismissed Employee ends, and provided in any case that you remain continuously disabled, you will be covered for Employee Health Care Benefits until the end of the second calendar year next following the year in which you last rendered compensated service and for Dependents Health Care Benefits until the end of the calendar year next following the year in which you last rendered compensated service.[18]

Thus, because Palagyi returned to service and left because of his disability, his insurance lasted until December 31, 2011 and his wife's insurance lasted until December 31, 2010.[19]

On January 14, 2014, Plaintiff Palagyi filed his Second Amended Complaint. In his complaint, Palagyi says Defendant P&C Dock recalled him from furlough, enrolled him in a new health insurance plan, and removed him from service in order to deprive him of the lifetime health insurance benefits under his old insurance plan.[20]

---

[14] *Id* at 19-28.
[15] *Id.* at 29.
[16] *Id.*
[17] Doc. 33-2.
[18] Doc. 33-27 at 31.
[19] Doc. 33-8 at 37.
[20] Doc. 30.

-3-

Case No. 1:13-CV-01734
Gwin, J.

On January 17, 2014, Defendant P&C Dock moved for summary judgment.[21/] Plaintiff Raymond Palagyi opposed.[22/] The motion is ripe.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[23/] The moving party must demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[24/] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[25/] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[26/] But the Court will view the facts and all reasonable inferences from those facts in favor of the non-moving party.[27/]

## III. Analysis

### A. Exhaustion of Administrative Remedies

Defendant P&C Dock says summary judgment is warranted because Plaintiff Palagyi failed to exhaust his administrative remedies.[28/] Plaintiff Palagyi says summary judgment is not

---

[21] Doc. 33.
[22] Doc. 35.
[23] *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).
[24] *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
[25] *See* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[26] *Matsushita*, 575 U.S. at 586.
[27] *Thomas v. Cohen*, 453 F.3d 657, 660 (6th Cir. 2004).
[28] Doc. 33-1 at 11.

Case No. 1:13-CV-01734
Gwin, J.

warranted because exhaustion is not required.[29]

ERISA contains no provision requiring the exhaustion of administrative remedies. However, the Sixth Circuit has held that exhaustion of administrative remedies is required for a benefits claim under Section 502.[30] The Sixth Circuit has not yet ruled on whether exhaustion of administrative remedies is required in claims brought under Section 510. However, district courts reaching the issue have held that exhaustion of administrative remedies is not required.[31]

Here it is unclear whether Plaintiff Palagyi brings his ERISA claim under Section 502 or Section 510. However, because Plaintiff Palagyi's ERISA claim fails on the merits under both sections, the Court declines to address the issue of exhaustion of administrative remedies.

**B. ERISA Claims**

It is unclear whether Plaintiff Palagyi is bringing his ERISA claim under Section 502 or Section 510. The Court addresses each in turn and finds Defendant P&C Dock entitled to summary judgement under either theory.

**1. ERISA 502 Claim**

Pursuant to ERISA Section 502, a civil action may be brought by a participant or beneficiary "to recover benefits due to him *under the terms of his plan*, to enforce his rights *under the terms of the plan*, or to clarify his rights to future benefits *under the terms of the*

---

[29] Doc. 35 at 6.

[30] *See Costantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir.1994); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir.1991).

[31] *Anderson v. Young Touchstone Co.*, 735 F. Supp. 2d 831, 836 (W.D. Tenn. 2010) ("Plaintiff, therefore, has made a claim of a violation of a statutory provision of ERISA, rather than a claim for benefits due under an employee benefit plan. Consequently, the exhaustion requirement does not apply to Plaintiff's proposed amended claims."); *Stumpf v. Cincinnati*, 863 F.Supp. 592, 597 (S.D.Ohio 1994) ("Because it appears that when deciding whether a company has violated statutory provisions of ERISA under section 510, exhaustion of administrative remedies is not beneficial, we hold that exhaustion is not necessary in this case"); *Garry v. TRW, Inc.*, 603 F.Supp. 157, 163-64 (N.D.Ohio 1985) ("The exhaustion of administrative remedies is not a prerequisite to bringing a civil action to redress violations of § 510 of ERISA").

Case No. 1:13-CV-01734
Gwin, J.

*plan*."[32] Plaintiff Palagyi says he was denied lifetime health insurance guaranteed by his old health insurance plan.[33] Defendant seeks summary judgment on this claim and says that both the old and new plan never gave Palagyi a right to lifetime health insurance.

Here, Plaintiff Palagyi's claim under Section 502 fails because there is no provision *under the old or new plan* that provides for lifetime health insurance. Recall, under the old plan, Palagyi's health insurance lasted until December 1, 2009 and his health insurance under the new plan lasted until December 31, 2011. Thus, the Court grants summary judgment on Palagyi's Section 502 claim.

**B. ERISA 510 Claim**

Pursuant to ERISA Section 510, "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ."[34] Plaintiff Palagyi says Defendant recalled him, enrolled him in a less favorable health plan, and removed him for the purpose of interfering with the lifetime healthcare benefits he was entitled to under the old plan.[35]

To state a claim under ERISA Section 510, a plaintiff must show the employer had a specific intent to violate ERISA. In the absence of direct evidence showing the employer's intent, a plaintiff can state a claim under ERISA Section 510 by showing the existence of "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of

---

[32] 29 U.S.C. § 1132(a)(1)(B) (emphasis added).
[33] Doc. 1; Doc. 35.
[34] 29 U.S.C. § 1140.
[35] Doc. 35 at 7.

Case No. 1:13-CV-01734
Gwin, J.

any right to which the employee may become entitled."[36]

Here the Court finds that Plaintiff Palagyi cannot meet this standard. Plaintiff Palaygi's entire basis for his Section 510 claim is that his old health insurance plan was more favorable than his new health insurance plan. He claim his old plan provided lifetime health insurance.[37] However, as discussed above, the Court finds that the old plan only provided him with health insurance until December 1, 2009. Therefore, Plaintiff cannot show that Defendant P&C Dock took any action for the purpose of interfering with his right to lifetime health insurance because Plaintiff Palagyi was never entitled to lifetime health insurance. The Court notes that Plaintiff Palagyi's recall and enrollment in the new healthcare plan actually *increased* the amount of time Plaintiff had health insurance because the new plan afforded him health insurance until December 31, 2011, two years later than the old plan.

### IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED**.

IT IS SO ORDERED.

Dated: February 18, 2014              s/       *James S. Gwin*
                                              JAMES S. GWIN
                                              UNITED STATES DISTRICT JUDGE

---

[36] *Pennington v. W. Atlas, Inc.*, 202 F.3d 902, 906 (6th Cir. 2000) (quoting *Smith v. Ameritech*, 129 F. 3d 857, 865 (6th Cir. 1997).

[37] *See generally* Doc. 1; Doc. 35.